STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| In re: Appeals of Michael Williams | } } } } } } | Docket Nos. 186-10-99 Vtec and 90-4-00 Vtec |

| | | |
|---|---|---|
| In re: Appeal of Ryan Brothers Electric and Michael Ryan | } } } } } | Docket No  216-9-00 Vtec |

Decision and Order

The parties have appealed from two decisions of the then-Zoning Board of Adjustment (ZBA) and one decision of the then-Planning Commission of the City of Burlington, regarding a project proposed by Ryan Brothers Electric and Michael Ryan at 1 Industrial Avenue.

Appellant Michael Williams is represented by Brian P. Hehir, Esq.; Cross-Appellants Ryan Brothers Electric and Michael Ryan are represented by Vincent A. Paradis, Esq.; the City of Burlington is represented by Kimberlee J. Sturtevant, Esq. Interested parties Sherry C. Dempsey and Elisa Nelson appeared and represented themselves, but did not file requests for findings or memoranda of law. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Michael and Therese Ryan own an approximately 3-acre parcel of land located at the corner of Industrial Parkway and Austin Drive in the Enterprise zoning district of the City of Burlington. The extension of Austin Drive as it crosses Industrial Parkway is known as Home Avenue. Cross-Appellant business Ryan Brothers Electric occupies about half of the existing building on the property; the remainder is rented to a bottled gas supplier, and to Pool World and Barrett Trucking, both of which have property across Austin Drive from the property. The property was formerly owned by the Chittenden County Transit Authority (CCTA), which used it as a bus garage. Other properties along Industrial Parkway or across Austin Drive near the intersection are industrial or commercial in use, including Pool World and Barrett Trucking directly across Austin Drive from Cross-Appellants' property. Immediately to the south of Cross-Appellants' property is the current bus garage for CCTA.

Austin Drive proceeds westerly from the intersection, and curves to proceed to the south behind Cross-Appellants property, roughly parallel with Industrial Avenue. A belt of ledgy and forested land runs along the westerly edge of the industrial properties lining the western side of Industrial Avenue, providing some buffer and separation between those allowed uses and the residential neighborhood along Austin Drive.

Cross-Appellants' property has two existing curb cuts providing access from the site onto Industrial Parkway, and one curb cut providing access onto Austin Drive.

In Docket No. 186-10-99 Vtec the ZBA had approved, with conditions, the construction of two buildings: a 6000-square-foot office building and an 11,200-square-foot warehouse. In Docket No. 90-4-00 Vtec the Planning Commission had approved, with conditions, a site plan for construction of a single building, with warehouse functions on the ground floor and office functions on the upper floor, to be set back 74 feet from Appellant's property line. In Docket No. 216-9-00 Vtec the ZBA approved the one-building proposal, with conditions. Cross-Appellants' preference now is for the single-building design.

The single building design is proposed to have no doorways, openings or lighting on its western side facing the residential neighborhood. It is now proposed to have a flat roof with a collection system to conduct stormwater from the roof to the municipal sewer system, avoiding a risk of increased surface flow towards Appellant's or other residential properties.

To the south of the proposed building is an area of ledge extending approximately ten feet above the finished floor elevation of the proposed building. Cross-Appellants propose to remove that ledge by blasting, to create a so-called storage area approximately 60' x 80' in area, extending northerly from the four proposed truck parking spaces to about the midpoint of the building, along the southwesterly property boundary.

Appellant challenges the approval of either design under several of the major impact review criteria and conditional use criteria. Cross-Appellants challenge the condition limiting the project to two truck parking spaces, and requests approval of the four parking spaces shown on the site plan in evidence as Exhibit 9. Cross-Appellants also challenge the condition limiting the Austin Drive access to emergency use only, and request both truck and automobile access to Austin Drive from a 24-foot-wide curb cut, in the location shown as a 20' curb cut on the site plan in evidence as Exhibit 9.

Section 17.1.5(a)(4) of the Conditional Use Criteria - bylaws in effect

Other than the specific zoning ordinance sections discussed below, neither Appellant nor the City argued that the proposed project will adversely affect any other bylaws in effect.

Section 13.1.6(a) of the Major Impact Review Criteria - undue air or water pollution

The project is served by municipal water supply and sewage disposal, and the proposed building is to be heated by natural gas. There was no evidence that the proposed building, use or site plan would create any undue water or air pollution.

<u>Sections 13.1.6(i) and (j) of the Major Impact Review Criteria - undue adverse effect on growth patterns and substantial conformance with City' s municipal development plan</u>

and <u>Section 17.1.5(a)(2) of the Conditional Use Criteria - character of the area affected</u>

The project is proposed for the City' s Enterprise zone (formerly known as the ' Industrial' zone) in which the present and proposed office and warehouse uses are encouraged to develop, and therefore will be in substantial conformance with the City' s development plan. It is proposed for an already-developed lot and therefore will have no undue adverse effect on growth patterns in the City. However, around the curve of Austin Drive is a well-established residential area, access to which is primarily by Austin Drive. This residential area will be affected by the proposed Austin Drive access and may be affected by the removal of too much of the ledge buffer, both of which are discussed below. The neighboring residential area is residential in character, but already has the character of a residential area bordered by substantial industrial development. That character will not be affected by the project; that is, other than these considerations of traffic safety and potential for noise discussed below, the project will not adversely affect the character of the neighboring residential area.

<u>Section 13.1.6(a) and (d) of the Major Impact Review Criteria - undue noise pollution and unreasonable soil erosion</u>

Appellant argues that the project will create undue noise pollution and unreasonable soil erosion during construction, but also that removal of the natural ledge barrier will increase noise and stormwater discharge emanating from the site onto Appellant' s property during use of the building after construction.

The project will not create unreasonable soil erosion, as adequate erosion controls are specified during construction and as the drainage from the new building will be collected and discharged to the municipal sewer system, thereby slightly reducing the drainage from the site towards Appellant' s property, which is not a current problem. The project will not create undue noise during construction; while blasting will undoubtedly create noise, the blasting necessary for the project is anticipated to occur over the reasonable duration of one week, and will be strictly controlled under the City' s blasting ordinance.

The building is positioned so as to create a barrier or screen protecting the residential neighborhood from noise from operations in the project yard, except for the area between the building and the southwesterly property boundary, which is occupied by existing ledge to a height of about ten feet above the finished floor elevation of the proposed building. Removal of as much of the ledge as is proposed, to create a so-called storage area, would impair the screening of the residential neighborhood to the southwest and west of the property from the noise and activities of the proposed project. However, removal of the ledge up to a line extended from the face of the building towards the property boundary will not impair the screening of the property, and may be allowed. However, we note that while this area was originally intended for the storage of piles of mulch and similar materials used by a landscaping company which is no longer a tenant at the facility, the evidence at the trial reflected that Cross-Appellants may now intend that it be used for ' storage' of the trailer segments of tractor trailers.

The reduced-size storage area approved by this order is specifically not approved as parking for any vehicles, including the trailer segments of tractor trailers. Such use falls within the category of ' parking' rather than ' storage' and must be applied for and approved, if at all, as additional outdoor parking spaces.

The four outdoor truck parking spaces proposed at the property boundary are approved. The evidence did not show that those four spaces would cause either an increase in adverse effects from the property on the adjacent residential neighborhood, or any impairment of on-site circulation on the property. Any objections by the City regarding the potential use of those spaces by a future tenant on the property rather than by Cross-Appellants' own business must be addressed in any permitting of changed uses for the property.

Section 13.1.6(e) of the Major Impact Review Criteria - unreasonable congestion or unsafe conditions on streets

and Section 17.1.5(a)(3) of the Conditional Use Criteria - traffic on roads and highways in the vicinity

Austin Drive is the primary route of access from the residential neighborhood to the west and south of the property, towards Industrial and Home Avenues. The approach along Austin Drive towards the curve from the residential neighborhood is a long straightaway, on which drivers exceed the 30 miles per hour speed limit[1] approaching the curve of Austin Drive. Drivers coming around the curve of Austin Drive towards the Industrial Avenue intersection from the direction of the residential neighborhood are often temporarily blinded by the sun in early morning conditions. Even at the speed limit of 30 miles per hour, the sight distance for such drivers to the westerly edge of the proposed Austin Avenue curb cut should be 330 feet to allow for a safe approach to that curb cut, for a driver to perceive a vehicle exiting that curb cut, react, and stop safely, even without the problem of the early morning sun. In the present application[2], this distance is insufficient when measured from the place the driver must be to see the curb cut after coming around the Austin Avenue curve. It is even less sufficient if any vehicles already around the curve have already had to stop for such an exiting vehicle.

Accordingly, the Austin Avenue curb cut must be closed to all but emergency access to and exit from the property. Accordingly, any access barrier will have to be designed to present an obvious visual barrier and to support warning signs but to allow for the plowing of snow and to allow passenger vehicles as well as emergency vehicles to break through in an emergency.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the project as designed for office and warehouse use[3] is approved, with the conditions as imposed by the then-ZBA and then-Planning Commission, except as those conditions are modified by this order, as follows:

Four truck parking spaces may be laid out as shown on Exhibit 9.

A storage area may be created, and ledge may be removed for that purpose, from the parking area to a line extended from the face of the building toward the southwesterly property boundary. This storage area is not approved for the parking of any vehicles, including the trailer portions of

tractor-trailers; any such use may be the subject of application to the Development Review Board for an amendment to the present approval.

The Austin Drive access shall be designed as solely an emergency access to and from the new building and its associated parking and loading areas. It may be designed to the 24-foot width and 24-foot radius specifications, but shall be designed with suitable and visible breakaway or flexible posts and/or lightweight plastic chains or bars, to allow emergency access from either direction, but also to allow snow plowing by the temporary removal of the chains or bars during plowing. It shall be designed to carry signage on both sides and also at an angle visible by drivers approaching along Austin Drive from the Industrial Avenue intersection, to the effect that this is " not a driveway - emergency access only."

Dated at Barre, Vermont, this 28th day of September, 2001.


_____
Merideth Wright
Environmental Judge


### Footnotes

[1.]     Drivers approaching the Austin Drive curve from Industrial Avenue tend to drive at approximately 25 miles per hour; however, that traffic movement is not the critical one for this analysis.

[2.]     This decision is without prejudice to any future application to design revised location, number and orientation of curb cuts and on-site circulation for this site.

[3.]     We note for the parties' guidance that Cross-Appellants did not apply for and this decision does not grant any approval for the operation of a transportation terminal at the property. Any such proposal must be the subject of a new proceeding to the now-DRB.